IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

STEPHEN MILLER, §
§
Plaintiff, §
§ Civil Action No. 3:13-CV-1984-D
VS. §
§
METROCARE SERVICES (formerly §
Dallas MHMR), §
§
Defendant. §

MEMORANDUM OPINION
AND ORDER

Defendant's motion to dismiss under Fed. R. Civ. P. 12(b)(6) presents the questions whether plaintiff has pleaded a plausible due process claim under 42 U.S.C. § 1983 for deprivation of liberty without the opportunity for a name-clearing hearing and whether plaintiff's claim under Tex. Health & Safety Code Ann. § 161.134 (West 2010) ("Section 161.134") is barred by sovereign immunity. For the reasons that follow, the court grants the motion as to plaintiff's § 1983 claim, treats defendant's motion as to plaintiff's Section 161.134 claim as filed under Rule 12(b)(1), dismisses plaintiff's Section 161.134 claim without prejudice, and grants plaintiff leave to replead.

I

Plaintiff Stephen Miller ("Miller") sues defendant Metrocare Services ("Metrocare"), his former employer, alleging that Metrocare is liable for violating the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.* ("FMLA"), the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA"), the Fair Labor Standards Act of 1938, 29

U.S.C. § 201 *et seq.* ("FLSA"), and the Texas Commission on Human Rights Act ("TCHRA"), Tex. Labor Code Ann. § 21.001 *et seq.* (West 2006). Miller also asserts claims under 42 U.S.C. § 1983 and Section 161.134.

Metrocare is a "community center," a non-profit organization created by Texas law to provide mental health services to persons with qualifying disabilities. *See* Tex. Health & Safety Code Ann. § 534.0015 (West 2010).[1] Metrocare hired Miller as its Human Resources Manager in 2006.[2]

Miller alleges that he repeatedly complained to Metrocare officials that the organization was mistreating its employees; that Metrocare denied him reasonable accommodations under the ADA; and that Metrocare terminated his employment in retaliation for a formal complaint that he made to Metrocare's chief executive officer detailing various company actions that he believed violated the FLSA, FMLA, ADA, and TCHRA.[3]

---

[1]Metrocare does not challenge that it is a government entity that can be held liable under § 1983. In fact, it relies on its governmental status to assert its entitlement to immunity from Miller's Section 161.134 claim.

[2]In deciding Metrocare's Rule 12(b)(6) motion, the court construes the amended complaint in the light most favorable to Miller, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in his favor. *See, e.g.*, *Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004). "The court's review [of a Rule 12(b)(6) motion] is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC,* 594 F.3d 383, 387 (5th Cir. 2010).

[3]In the letter, Miller alleged that Metrocare and its chief financial officer had engaged in the following misconduct:

Metrocare explained its decision to terminate Miller's employment in a letter to him that specified the "factor(s) [it] considered in relation to [his] separation from service." D. App. 1.[4] According to the letter, Miller "falsif[ied] data entries in the Metrocare HRIS [Human Resources Information System]." *Id.* This ground for termination refers to Miller's alleged falsification of documents related to criminal background checks in December 2012.

---

> [1] Repeatedly violated [the FLSA], and had retaliated against [Miller] for airing complaints about the misclassification of workers;
> [2] Continued to bully employees to not accurately record their time;
> [3] Rescinded a promotion and then fired an employee as an "organizational risk" who had documented overtime hours in the past, who had used the ethics hotline to get changes made, and who had threatened to file a complaint with the Department of Labor;
> [4] Fired employees while on FMLA leave, or violated Department of Labor guidelines in terms of the treatment of FMLA qualified employees;
> [5] Instructed employees not to participate in board meetings subject to the Open Meetings Act, and thereby interfer[ed] with their First Amendment Rights; and
> [6] Were requiring [Miller] to act as a data entry clerk, which was outside his job description, even though he has dyslexia, and thereby effectively denying a requested reasonable accommodation.

Am. Compl. ¶ 4.14 (bullet points replaced with numerical headings).

[4]This document qualifies as an "attached" document, *see supra* note 2, even though it is included in an appendix rather than physically attached to the motion. N.D. Tex. Civ. R. 7.1(i)(1) requires that "[a] party who relies on materials—including depositions, documents, electronically stored information, affidavits, declarations, stipulations, admissions, interrogatory answers, or other materials—to support or oppose a motion must include the materials in an appendix." Metrocare complied with Rule 7.1(i)(1).

The letter also states as a basis for termination that Miller "[used] [his] position as the Director of Human Resources to remove [his] name from the aforementioned Criminal Background Checks in the years 2010, 2011 & 2012." *Id.* Miller maintains that these charges are stigmatizing, that Metrocare has published them, and that he has a right to a name-clearing hearing under *Rosenstein v. City of Dallas, Texas*, 876 F.2d 392 (5th Cir. 1989), *aff'd in relevant part*, 901 F.2d 61 (5th Cir. 1990) (en banc) (per curiam). *See* D. App. 2. Miller's contention that Metrocare published the termination letter is based on the premise that Texas law allows members of the public to obtain the employment records of public employees. *See* Tex. Gov't Code Ann. §§ 552.022 & 552.024 (West 2004). Miller also alleges that Metrocare has produced the letter in response to open records requests.

In a letter to Metrocare, Miller's attorney, John H. Crouch, Esquire ("Crouch"), requested a name-clearing hearing under *Rosenstein*. Crouch noted in the letter that Julie Noble, the Chair of Metrocare's Board of Trustees, had offered Miller the opportunity to conduct a name-clearing hearing during one of the Board's meetings, and Crouch requested in the letter that Metrocare "notify [him] immediately" "[i]f this opportunity [was] still available." D. App. 2. Metrocare responded through its attorney, Joel E. Geary, Esquire ("Geary"), that Miller "was an at-will employee and had no Constitutionally-protected 'property' interest in his employment." *Id.* at 3. Geary offered Miller the opportunity to conduct a name-clearing hearing during the public portion of the Board of Trustees' meeting on April 25, 2013. He stated in his letter that Miller was free to present the Board with any documents or witness statements that Miller believed were relevant. But Geary also stated

that Miller would not be able to question the Trustees or any senior management in attendance.

Neither Miller nor Metrocare has attached to its pleadings or otherwise submitted any documents indicating that Miller responded to Geary's letter or otherwise accepted Metrocare's offer to conduct a name-clearing hearing. In his amended complaint, Miller alleges that he "has formally requested the opportunity for a 'name clearing' hearing" and that Metrocare's response was insufficient. Am. Compl. ¶ 4.17.[5] Miller filed this lawsuit shortly thereafter, on May 28, 2013. Metrocare moves under Rule 12(b)(6) to dismiss his § 1983 and Section 161.134 claims.

II

"In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of [a] plaintiff['s] amended complaint by 'accepting all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks and alteration omitted)). To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff

[5]Even construing Miller's amended complaint in the light most favorable to him, until Miller pleads additional facts supporting either inference, it is unreasonable to infer that Miller responded to Geary's letter or attended the April 25, 2013 Board of Trustee's meeting.

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)) (alteration omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

III

A

Metrocare maintains that Miller has failed to plead a plausible due process claim under § 1983 based on the premise that Metrocare denied his request for a name-clearing hearing.[6] Miller counters that the name-clearing opportunity offered by Metrocare did not satisfy due process because (1) Metrocare did not give him sufficient notice of the substance of the charges against him; (2) Metrocare did not offer Miller even a limited right to confront or cross-examine his accusers; and (3) Metrocare did not offer Miller any meaningful remedy

---

[6]Metrocare argues first that it is entitled to dismissal of this claim on the basis that there was no publication of the information that Miller alleges was defamatory. Considering the grounds on which the court is dismissing Miller's § 1983 claim, it need not address this argument.

beyond the opportunity to publicly present a defense of his actions.

B

"Section 1983 provides a civil remedy in federal court for violations, under color of state law, of a person's constitutionally recognized rights, privileges, or immunities." *Bledsoe v. City of Horn Lake, Miss.*, 449 F.3d 650, 653 (5th Cir. 2006) (citing *Findeisen v. N. E. Indep. Sch. Dist.*, 749 F.2d 234, 236-37 (5th Cir. 1984)). "If the government discharges an employee amidst allegations of misconduct, the employee may have a procedural due process right to notice and an opportunity to clear his name." *Id.* (citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 573 (1972)). "A public employee, even an at-will employee, has a constitutional right to notice and an opportunity to be heard when the employee is 'discharged in a manner that creates a false and defamatory impression about him and thus stigmatizes him and forecloses him from other employment opportunities.'" *Bellard v. Gautreaux*, 675 F.3d 454, 461 (5th Cir. 2012) (quoting *Bledsoe*, 449 F.3d at 653). "Neither damage to reputation alone nor the stigma resulting from the discharge itself trigger the protections of due process." *Bledsoe*, 449 F.3d at 653 (citing *Paul v. Davis*, 424 U.S. 693, 701 (1976); *Wells v. Hico Indep. Sch. Dist.*, 736 F.2d 243, 256 (5th Cir. 1984)) (footnote omitted). "Rather, a liberty interest is infringed, and the right to notice and an opportunity to clear one's name arises, only when the employee is 'discharged in a manner that creates a false and defamatory impression about him and thus stigmatizes him and forecloses him from other employment opportunities.'" *Id.* (quoting *White v. Thomas*, 660 F.2d 680, 684 (5th Cir. Nov. 1981)).

The Fifth Circuit "employs a seven-element 'stigma-plus-infringement' test to determine whether § 1983 affords a government employee a remedy for deprivation of liberty without notice or an opportunity to clear his name." *Id.* (citing *Hughes v. City of Garland*, 204 F.3d 223, 226 (5th Cir. 2000)).

> The plaintiff must show: (1) he was discharged; (2) stigmatizing charges were made against him in connection with the discharge; (3) the charges were false; (4) he was not provided notice or an opportunity to be heard prior to the discharge; (5) the charges were made public; (6) he requested a hearing to clear his name; and (7) the employer denied the request.

*Id.* (citing *Hughes*, 204 F.3d at 226).

C

The court holds that Miller has failed to plead a plausible claim for relief under § 1983. Miller admits that Metrocare offered him the opportunity to clear his name during the public portion of its April 25, 2013 Board of Trustees' meeting. His amended complaint therefore reflects that his employer did not deny his request for a name-clearing hearing.

Miller nevertheless argues that the name-clearing opportunity Metrocare offered him was deficient to cure the ongoing damage to his reputation. He maintains that Metrocare failed to give him sufficient notice of the substance of the charges against him, failed to offer him even a limited right to confront or cross-examine his accusers, and failed to offer him any meaningful remedy beyond the opportunity to publicly present a defense of his actions.

Assuming that Miller was entitled to a certain amount of notice, he has not cited any authority that supports the premise that the notice Metrocare provided to him was insufficient. Metrocare has submitted Miller's termination letter and the correspondence

between Miller's and Metrocare's attorneys. Miller's amended complaint indicates that he was familiar with the grounds for termination stated in the termination letter (i.e., he was familiar with the charges against him). The correspondence between Miller's attorney and Metrocare's attorney indicates that Metrocare gave Miller sufficient notice regarding the time and location of the proposed name-clearing hearing.

Miller alleges that the charges made in the termination letter were false and gave rise to a stigmatizing impression that he sought to conceal a past criminal act. He maintains that, to combat this stigma, he should have been given the right to confront or cross-examine Metrocare's Trustees or employees.

The rights of confrontation and cross-examination are not universally applicable to all hearings. *See, e.g., Goss v. Lopez*, 419 U.S. 565, 583 (1975) (refusing to recognize right to confront and cross-examine witnesses in school disciplinary hearings). Miller does not cite any binding authority to support his argument that the right to a name-clearing hearing includes the right to confront or cross-examine witnesses.[7] Miller also fails to address the fact that "[t]he name-clearing hearing is not an adversarial proceeding" but "a proceeding in which the employee is provided an opportunity to clear his or her name publicly. . . . [T]his opportunity can be provided without adversarial proceeding processes." *Gunasekera v. Irwin*, 678 F.Supp.2d 653, 662 (S.D. Ohio 2010) (citation omitted); *see also Rosenstein*, 876

[7]The circuits that have reached this issue "are split regarding whether the entitlement to a name-clearing hearing includes the right to cross-examine adverse witnesses." *Gunasekera v. Irwin*, 678 F.Supp.2d 653, 662 (S.D. Ohio 2010).

F.2d at 395 (explaining that name-clearing hearing provides terminated employee "a public forum" and an "opportunity to clear [his] name, not actual review of the decision to discharge the employee"). Accordingly, the court holds that Miller fails to plausibly allege that he had a right to confront or cross-examine Metrocare's Trustees or employees that was infringed.

Finally, Miller alleges that government employers must offer suitable remedies when an employee proves that defamatory statements made by the employer are false. Miller misunderstands the nature of a name-clearing hearing. "[T]he process due such an individual is merely a hearing providing a public forum or opportunity to clear one's name, not actual review of the decision to discharge the employee." *Rosenstein*, 876 F.2d at 395 (citing *Roth*, 408 U.S. at 573 n.12). Thus a name-clearing hearing need only afford an opportunity to clear one's name, not a remedy beyond such a hearing. Miller has failed to plead a plausible claim that he was denied this opportunity.

Accordingly, the court grants Metrocare's motion and dismisses Miller's due process claim under § 1983.

IV

Metrocare argues that Miller's Section 161.134 claim is barred under Texas law by sovereign immunity. In response, Miller concedes that his Section 161.134 claim must be dismissed. *See Ctr. for Health Care Servs. v. Quintanilla*, 121 S.W.3d 733, 735 (Tex. 2003) (holding that Section 161.134 does not waive state sovereign immunity). Construing Metrocare's motion as one filed under Rule 12(b)(1), the court grants Metrocare's motion to dismiss Miller's Section 161.134 claim without prejudice. *See Palo ex rel. Estate of Palo*

*v. Dallas County*, 2005 WL 2090640, at *1 (N.D. Tex. Aug. 29, 2005) (Fitzwater, J.) (explaining that Eleventh Amendment immunity must be addressed through a Rule 12(b)(1) motion, construing Rule 12(b)(6) motion as Rule 12(b)(1) motion, and dismissing claim without prejudice) (citing *Warnock v. Pecos County*, 88 F.3d 341, 343 (5th Cir. 1996)).

V

Although the court is granting Metrocare's motion to dismiss under Rule 12(b)(6), it will permit Miller to replead. *See, e.g.*, *In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) (noting that district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing case, unless it is clear that defects are incurable or plaintiffs advise court that they are unwilling or unable to amend in a manner that will avoid dismissal). Because there is no indication that Miller cannot, or is unwilling to, cure the defects that the court has identified in his § 1983 claim, the court grants him 28 days from the date this memorandum opinion and order is filed to file an amended complaint.

* * *

For the reasons stated above, the court grants Metrocare's motion to dismiss Miller's § 1983 claim under Rule 12(b)(6), treats Metrocare's motion as to Miller's Section 161.134

claim as filed under Rule 12(b)(1) and dismisses the claim without prejudice, and grants plaintiff leave to replead.[8]

**SO ORDERED**.

July 16, 2014.

SIDNEY A. FITZWATER
CHIEF JUDGE

[8]On June 30, 2014 Metrocare filed a motion for summary judgment, to which Miller's response is due on August 8, 2014. Normally, when leave to amend is sought after a summary judgment motion has been filed, courts routinely decline to permit the moving party to amend. As the Fifth Circuit has recognized, "'[t]o grant . . . leave to amend is potentially to undermine [a party's] right to prevail on a motion that necessarily was prepared without reference to an unanticipated amended complaint. . . . A party should not, without adequate grounds, be permitted to avoid summary judgment by the expedient of amending [his] complaint.'" *Overseas Inns S.A. P.A. v. United States*, 911 F.2d 1146, 1151 (5th Cir. 1990) (quoting this court's opinion below), *aff'g* 685 F. Supp. 968 (N.D. Tex. 1988) (Fitzwater, J.). Here, however, Metrocare filed its summary judgment motion while its motion to dismiss was pending. Under the circumstances of this case, the court concludes that Miller should be permitted to replead despite the pendency of Metrocare's summary judgment motion.